William C. Ault, Plaintiff in Error, *v.* Erastus Rawson, Defendant in Error.

#### ERROR TO LA SALLE.

An affidavit for a continuance which does not pretend to bring the case within the statute, as a matter of right, is addressed to the discretion of the judge to whom the application is made.

It is competent for a witness to prove upon his *voir dire*, the execution of a release of his interest in the matter litigated.

The question of competency rests with the court, the jury decides upon credibility.

Ault *v.* Rawson.

A person who gives another authority to draw upon him for funds, is bound to pay the drafts, even though the funds have been misapplied.

This was an action of assumpsit brought by Rawson against Ault in La Salle county Circuit Court, and tried June term, A. D. 1852, J. G. Wilson, presiding.

1st count. Common count for money paid, laid out, and expended; money had and received; money lent and advanced. There was but a single count to the declaration, to which was pleaded the general issue to which there was a joinder.

June term, A. D. 1853, defendant moves for a continuance upon the following affidavit : —

" J. O. Glover, attorney for defendant, William C. Ault, states on oath that this suit is brought to recover money alleged to have been won at gaming. Said defendant has advised affiant that he has a good and legal defence to this suit, and in the opinion of affiant the facts stated by defendant do amount to a perfect defence. Affiant believes the statement so made by defendant to be true ; that affiant cannot try this cause safely without the presence of defendant, said defendant's counsel not being acquainted with the witnesses by whom the facts are to be proved.

Affiant saw a messenger from Peru, from defendant, on yesterday, who stated that defendant was too sick to come to this court. Affiant believes this said statement to be true."

Which motion the court overruled, and the defendant excepted.

The cause then came on to be tried before a jury. The plaintiff called H. N. Pease, who, on application of defendant, was sworn on his *voir dire*, and testified to the court that the money for which this suit is brought was money lost at gaming by witness in playing cards with defendant; that said money so lost was the money of the plaintiff; that witness lost at gaming with various persons some thirty-six or thirty-eight hundred dollars ; that after he lost the money he footed up to ascertain the amount; this was in January, 1851; I do not consider myself liable to plaintiff for the money lost to Ault; I told him that I should pay him back when I got able ; I have received a release from plaintiff; this is it, (producing a release in the words and figures following) : —

" In consideration of the sum of one dollar to me paid by H. N. Pease, I hereby release him from all liability to me for or on account of certain sums lost by said Pease at play with William C. Ault or Asbury, by Bosley, of Peru, and to recover which

41 *

said sums I have commenced actions in the La Salle county circuit court, State of Illinois, the money so lost having belonged to me.

E. RAWSON." [Seal.]

Chicago, Sept. 25, 1851.
　　Witness."

Before this deed was executed I had deeded to Rawson a house and lot worth some $400, on which was a mortgage of $150 or $175; I was trying to redeem the house and lot. At the time I told Rawson I should at some time or other repay him this money, he said that I was too poor, and he must have it from the man who had won it.

The defendant then objected to the said H. N. Pease being sworn as a witness, upon the ground that he was interested in the event of the suit. The court overruled the objection, and permitted the said witness to testify in said suit, to which decision the said defendant then and there excepted. The said H. N. Pease was then sworn as a witness, and testified as follows:—

I know the parties; Rawson four years, defendant since 1850; became acquainted with him in Peru; he was keeping a saloon at the time; I was engaged in purchasing grain for defendant on a contract with him; he furnished the money, and I had so much a bushel for buying; during that season I had bought eighty or ninety thousand dollars' worth. The first time I played with Ault I was in Booley's saloon; we played eucher, and then Ault proposed to turn it into poker; I told him I did not understand the game, and he said he would teach me; I lost most every time small sums. Ault then proposed to play single-handed eucher, at five dollars a game; we played; I was losing fast, and we raised it to ten dollars, and before we got through we played at twenty dollars a game; this was about the last of September, 1850; Ault won of me at that time three hundred and fifty dollars; I told him it was Rawson's money; Ault treated to liquor a number of times; the liquor made me stupid; had a different effect upon me from what it did generally; this was, I think, from long sitting; I do not think the liquor was drugged. At noon I proposed to go to dinner; Ault said he could accommodate me to lunch; he did so; we then played again about four hours; the money I lost at this time was a portion of some money I had received upon a draft drawn by Goodell, upon Coats, of Peru; the draft was given me by plaintiff to use in the purchase of grain for him; I sold the draft to Coffing; and another time when I was in Booley's, Ault and Morris came

in; I was afraid to have Booley see me play, as he had warned me against it, and I was afraid he would report me to Rawson; I slipped out at the back door, and went over to Ault's, and he and I played single-handed eucher for ten dollars a game; we played until eleven o'clock; I lost in the neighborhood of three hundred dollars; he let me have ninety dollars back, for which I gave him my note; I told Ault that he had made his brags that he played the cards on me; he replied, that he had played the cards on me, and he would do it; I was authorized by Rawson to draw a draft on him; part of the money I last lost to Ault was obtained by my drawing on Rawson; after we had played a little while I drew a draft on Rawson, and sold to S. G. Smith, and thus raised the money. At the first sitting it was I that proposed to raise the bet; I had been losing, and proposed to raise the bet; Ault knew all the time that the money was Rawson's; I told him it was. To each and every part of the above testimony in relation to the money obtained of Smith, the defendant at the time it was offered, objected, on the ground that this action could not be maintained by the plaintiff for money lost by Pease, obtained in the manner above stated. The court overruled the several objections of the defendant, and decided that an action might be maintained by the present plaintiff for money lost at gaming by the witness Pease, of the money obtained by him as above stated. To each of said decisions the defendant excepted at the several times when they were made. Said witness further testified as follows: Two weeks after I received twelve hundred dollars, sent to me by Rawson, by express; Ault proposed to play a single-handed game at poker; we played; I lost forty dollars; the money belonged to Rawson; I had no money of my own with me. This last testimony was objected to by the defendant at the time the same was offered and given. The objection was overruled by the court. To which decision the defendant then and there excepted.

The witness, on cross-examination, stated as follows: I can't swear that the draft sold by me to Smith was ever paid by plaintiff; the last forty dollars I received from Rawson personally; at the time we played Ault drank the same kind of liquor I did, and about the same amount. After the first sitting it was I that asked Ault to play; I wanted to get back what I had lost at the first time I played with Ault; I played with Morris after I played with Ault; I also played with Alexander Samont and George Hughes; I did not lose any thing to him; I played cards wherever I could get a chance about that time; was in the habit of doing it. After I lost the money I did

propose to some one to draw a draft on Rawson for money and run away to Texas or California; I did think of doing it, but I don't believe now that I should have done it; I felt very bad, and didn't know what to do. When Ault let me have back the ninety dollars he said he would do it if I would not grumble any more.

Reëxamined. At the time I was authorized to draw a draft on Rawson, the draft was never returned to me; afterward I had other money of Rawson's.

Recross-examined. At the time I drew the three hundred dollar draft I did it to raise money to play with.

The plaintiff then called on a witness, Seth Hardin, who testified that in October, 1850, the witness Pease asked me to go with him to defendant's; I went; I tried to get Ault to pay back the money or a part of it; I proposed to him to pay half of it back, as it was Rawson's money, and that I would try and see what arrangements could be made in relation to the balance. Ault said he had won seven hundred dollars of Pease; that he had given back ninety dollars, and he would be d——d if he would pay back a dollar more; Ault knew that it was Rawson's money; I know that Pease had no money of his own; I knew about his affairs; he frequently borrowed a few dollars of me; I was also purchasing grain for Rawson, and knew that Pease received packages of money from Rawson to purchase grain with; I know that Rawson had sent to Pease a twelve hundred dollar draft drawn by Goodell; I have no means of knowing as to the ownership of the money lost but from Pease's declarations, and what I have already stated. This was all the evidence offered by the plaintiff.

The defendant then called John D. Coats, who stated that he knew the character of H. N. Pease, the witness, for truth. It was generally good; he had the reputation of stretching the truth a little, or exaggerating.

Cross-examined. What I mean to say is, that he stretched his stories about contracts he had made. If he had told me he had bought fifty thousand bushels I should have believed he had bought twenty thousand bushels. This was all the evidence.

The court, at the request of the plaintiff, instructed the jury as follows: —

The court is asked to instruct the jury on the part of the plaintiff.

1st. If the jury believe from the evidence that the defendant won, at play, from the agent of the plaintiff, money of the plaintiff, and which had been intrusted to said agent of the plaintiff for a specific purpose, they must find a verdict for the plain-

tiff for the amount of money so won, with interest, unless the money, or some part of the same, has been returned to the plaintiff or to said agent.

2d. That a party winning money from another, at play, gains no property in the money so won, and the owner of said money can maintain an action for the money so won against the winner.

Which instructions were severally objected to by the defendant, and the court overruled the objections and gave said instructions. To which ruling of the court and to giving of said instructions the defendant excepted at the time they were given.

The defendant asked the court to instruct the jury as follows: —

For the defence the court is asked to instruct the jury.

1st. That even if this witness Pease did lose at gaming to defendant a sum of money which belonged to the plaintiff, and if at that time the defendant paid back to Pease ninety dollars of the money lost, and took Pease's note for the same, the plaintiff is not entitled to recover the ninety dollars.

2d. If the witness Pease did lose at games with cards to defendant the sum of three hundred dollars, which money was received by said witness Pease from Smith for a draft drawn by Pease upon the plaintiff, sold by Pease to Smith, the plaintiff is not entitled to recover the money in this action unless he has proven that he has paid the draft.

3d. If the plaintiff authorized Pease to draw certain drafts upon him to pay for corn, that did not authorize Pease to draw upon plaintiff for money to be used in gaming; nor did it bind plaintiff to pay drafts drawn by the witness for money to be used in gaming.

4th. The plaintiff cannot recover in this action for bills of banks which were lost by Pease to defendant, which were of a less denomination than five dollars, unless such bills were issued by a banking institution in this State authorized by its charter to issue bills of a less denomination than five dollars.

5th. If the jury believe from the evidence that the witness Pease is directly and necessarily pecuniarily interested in the event of this suit they will not consider his testimony at all.

6th. That there is no release from Rawson to Pease in evidence in this cause.

All of which instructions the court refused to give, except the first, which was given. To the refusal of the court to give the instructions asked for by the defendant severally, the defendant then and there excepted.

*Errors assigned.* — 1st. The court erred in overruling the motion of defendant for a continuance of the cause.

2d. The court erred in admitting the evidence of the witness H. N. Pease.

3d. The court erred in admitting evidence concerning money lost by Pease, not shown to have been paid by the defendant in error.

4th. The court erred in giving each of the instructions asked for by the defendant in error.

5th. The court erred in refusing to give the second instruction asked for by the plaintiff in error.

6th. The court erred in refusing to give to the jury the third instruction asked by the plaintiff in error.

7th. The court erred in refusing to give to the jury the fourth instruction asked for by plaintiff in error.

8th. The court erred in refusing the fifth instruction asked by defendant in court below.

9th. The court erred in refusing the sixth instruction asked for by defendant in court below.

10th. The court erred in admitting improper evidence in behalf of the plaintiff in court below.

11th. The court erred in rendering the judgment aforesaid in manner aforesaid.

GLOVER & COOK, for plaintiff in error.

CHUMASERO and TAYLOR, for defendant in error.

CATON, J. The first complaint to be noticed is, that the court overruled the defendant's motion for a continuance. That motion was founded on an affidavit of one of his attorneys, stating that the defendant had advised him of the facts to be proved in the defence, and that in his opinion they would constitute a defence to the action, but that he was not advised by what witnesses these facts were to be proved, and that the defendant was unable to attend at the trial by reason of sickness. This affidavit does not pretend to bring the case within the statute, entitling the party to a continuance as a matter of right. This affidavit may have justified a continuance in the exercise of a sound discretion, but we are very clear it did not entitle the party to a continuance as a matter of right. In the first place it did not state what the facts were which were expected to be proved, so that the court could judge of its materiality, and if deemed material, that the plaintiff might have admitted them.

Ault *v.* Rawson.

Again, it showed no excuse why the party had been guilty of such gross apparent negligence in the preparation for the trial, by omitting to inform his attorneys of the names of his witnesses, and what each would testify to. No prudent party will ever omit this ; and if he does, he must expect to suffer the consequences.    When he omits such reasonable precaution, it is asking quite too much that the other party shall be made to suffer for his neglect, by having the trial postponed to another term.    Even admitting that the decision of this motion could be assigned for error, we are well satisfied that the court decided properly in overruling the motion.

But for the release executed by the plaintiff to the witness Pease, he undoubtedly would have been interested ; but that objection was completely obviated by the release, and it is difficult to conceive upon what ground the objection could then be urged.    He was competent upon his *voir dire* to prove the execution of the release.    If he was competent upon his *voir dire* to show that he had had an interest, it was equally competent to show in the same way that his interest had ceased by the execution of a release.    It has been even held that the contents of written documents, and even the most solemn records, may be proved by parol upon the *voir dire* without showing their loss, and this either to show the witness incompetent, or that his incompetence has ceased, as a criminal conviction, a pardon, or a discharge in bankruptcy.    The witness in this case was unquestionably competent, and the court decided right in admitting him to testify.    It was for the court to decide upon his competency.    His credibility was with the jury.    The only other question of sufficient importance to require notice here arises from the refusal of the court to give the second and third instructions asked for the defendant ; to understand which it is necessary to advert to the evidence.    The suit was brought to recover money belonging to the plaintiff, which the defendant had won of Pease at gaming.    Pease swore that he was in the employ of the plaintiff, purchasing produce, for which purpose the plaintiff furnished him money.    Of the money thus furnished him the defendant had won of him in gambling about seven hundred dollars.    Three hundred dollars of this money he obtained upon a draft which he drew upon the plaintiff, and passed to one Smith.    That the plaintiff had authorized the witness to draw on him for funds, with which to purchase produce.    That at the time he drew the draft and obtained the money, he designed it for the purpose of gambling with Ault, and not for the purchase of produce.    Upon this evidence the second and third instructions were asked as follows : " If the

witness Pease did lose at games with cards to the defendant the sum of three hundred dollars, which money was received by said witness Pease from Smith, for a draft drawn by Pease upon the plaintiff, sold by Pease to Smith, the plaintiff is not entitled to recover this money in this action, unless he has proved that he has paid the draft.

" If the plaintiff authorized Pease to draw certain drafts upon him to pay for corn, that did not authorize Pease to draw upon plaintiff for money to be used in gaming, nor did it bind plaintiff to pay drafts drawn by the witness for money to be used in gaming."

These the court refused to give, and we are of opinion they do not express the law as applied to this case. The witness was engaged in the plaintiff's business, accredited with authority to draw on him for money, and he was bound to pay the draft unless Smith, who took the drafts, knew that the money was to be applied to purposes different from those for which the draft was authorized to be drawn. If any one had to suffer for the want of fidelity of Pease, it was he who had reposed confidence in the witness, and given him credit and authority to draw the draft, and not he who acted in good faith upon that authority. No doubt, as between the plaintiff and Pease, the former might have refused to pay the draft on account of the misapplication of the funds; but that case could only arise where the plaintiff had dishonored the draft, and Pease had paid it himself. As between the plaintiff and Smith the draft was drawn by authority; and when it was drawn, it was the plaintiff's as much as if the plaintiff had sent Pease his promissory note, to dispose of for the same purpose; and when the draft was converted into money that money was the plaintiff's as much so as if he had negotiated the draft of another person, which the plaintiff had sent him for that purpose, or as if he had sold a horse or any other article of personal property belonging to the plaintiff for the same purpose. We find no error in the record, and the judgment of the circuit court must be affirmed.

*Judgment affirmed.*